# United States District Court
# Northern District of Indiana
# Hammond Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 2:17-CR-73 JVB |
| JAMES E. RANOCHAK, et al., | |

## OPINION AND ORDER

This matter is before the Court on Defendant Charles Ringger's motion (DE 45) to suppress his statements to law enforcement officers made during the execution of a search warrant. The Court held an evidentiary hearing on the motion in two installments. The motion is now ripe for decision.

### A. Background

On September 11, 2013, Defendant Ringger was employed by and working as a pharmacist at North Anthony Pharmacy in Fort Wayne, when law enforcement officers executed a search warrant at the pharmacy and other offices located at the premises. Ringger maintains that, because he was seized in violation of his Fourth Amendment rights, the statements he made to law enforcement officers that day must be suppressed.

### B. Summary of Relevant Testimony

Ringger testified on the first hearing day. According to his version of the events of September 11, 2013, soon after he opened the pharmacy, normally around 9:00, he saw an armed state policeman at the door who handed him a warrant authorizing the search of the pharmacy.

A short time later, about fourteen more armed officers and agents entered the pharmacy. One of the officers told him to sit down in a chair in the pharmacy waiting area. He had two cell phones with him that were taken away. He was not allowed to answer the pharmacy phone, which was unplugged at some point during the search. He was not allowed to serve customers. He was not told he was free to leave. The first officer to enter the pharmacy stayed at the entrance to the pharmacy all day. Ringger claims the officer did not allow him to leave the pharmacy. The officers and agents remained at the pharmacy until about 5:00 pm. Twice during the search Ringger asked to use the restroom. Both times one of the officials escorted him there and required him to leave the door open. He claims he was not allowed to call Defendant Brent Losier, who owns the pharmacy, his lawyer, or anyone else. He said that at some point during the afternoon, about four and a half hours after the search began, he was led to a room in the back of the building where he was questioned. He was not told he did not have to answer the officers' questions. When the questioning ended, he was told to sit in the waiting area again. He didn't feel free to leave while the search was going on because the agents were all armed.

Under cross-examination, Ringger stated that he was the only pharmacist scheduled to work on September 11, so that he was the person who would close the pharmacy that day. No one ever drew a weapon on him or anyone else during the course of the search. He never asked to leave the pharmacy, to contact a lawyer, or make a phone call. At the end of the day, he closed the pharmacy.

Lisa Sweatland, who, on the date of the search, was an Indiana Medicaid Fraud Control Unit investigator, also testified. Before the execution of the search warrant on September 11, 2013, she attended a briefing at which the search time members were informed that no one at the

pharmacy would be arrested. She was present during the execution of the search warrant, which she stated began around 10:00 am. She was unarmed. She asserted that it was not an Indiana state trooper but a DEA employee named Guy Baker who led the search and handed the search warrant to Ringger. Baker was not wearing a uniform that day. After Ringger was given the search warrant, the team went through the building and asked all occupants to go to the lobby, where there were chairs. This was done for officer safety and to insure that no evidence was destroyed. According to Sweatland, the standard practice when entering a business to execute a search warrant when no arrest is planned is to advise those found on the premises that they could leave but would not be permitted to come back in, a practice that would have been followed in this case. Sweatland testified that only minutes passed between the time all the employees were gathered in the lobby and when Ringger was asked to be interviewed. She and Steve Moran conducted the interview with Ringger, who spoke with them voluntarily after being told he was not required to do so. According to the memorandum of the interview, which was prepared by Moran, the interview began at 10:15 am, which comports with Sweatland's memory. She testified that Ringger did not wait four hours to be interviewed. The interview lasted an hour or so.

Steven Moran, a special agent with the FDA, testified on the second hearing day. His recollection was that the search began around 9:00 am and the Ringger interview about half an hour later, but Government Exhibit 4, the return of the search warrant, shows that the search began at 10:00 am. He asked Ringger if he wanted to be interviewed and Ringger agreed. Moran could not remember whether he specifically told Ringger that he didn't have to submit to the interview. The interview was conducted in a conversational tone. Ringger never asked to

terminate the interview or to speak to an attorney. Moran agreed with Sweatland that the interview lasted about an hour.

**C.     Discussion**

Ringger argues that he was illegally seized during the execution of the search warrant at the pharmacy where he worked, in violation of the Fourth Amendment and that, as a consequence, the statements he made to Sweatland and Moran must be suppressed.

In his brief, Ringger makes much of the facts that during the conduct of the search, he was directed to sit in the lobby, was escorted at all times, even to the restroom, and did not have access to his cell phones, while a law enforcement officer, who denied entry to anyone but other law enforcement officers, was posted at the door of the pharmacy. The Court finds that, even if these circumstances amounted to a seizure, it was not illegal.

Under Supreme Court precedent, a law enforcement officer has categorical authority to detain occupants of premises being searched pursuant to a warrant for the duration of the search. *Muehler v. Mena*, 544 U.S. 93, 98 (2005). "In executing a search warrant officers may take reasonable action to secure the premises and to ensure their own safety and the efficacy of the search." *Los Angeles Cty. v. Rettele*, 550 U.S. 609, 614 (2007). Requiring Ringger to sit in the lobby and otherwise controlling his movements while he remained in the pharmacy during the search were reasonable measures to promote those goals. Moreover, the Court finds Sweatland's testimony that Ringger would have been told at the start of the search that he could leave the pharmacy but would not be allowed to re-enter to be more credible than his testimony that he was never told he could leave.

The Court next considers whether the interview Sweatland and Moran conducted with Ringger the day of the search was an illegal seizure. Questioning by law enforcement amounts to a seizure if, "taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Florida v. Bostick*, 501 U.S. 429, 434 (1991). Conduct indicating a seizure includes "the threatening presence of several officers, display of their weapons, physical touching of the private citizen, use of forceful language or tone of voice . . . and the location in which the encounter takes place." *United States v. Clements*, 522 F.3d 790, 794 (7th Cir. 2008). No Fourth Amendment seizure occurs when there is a consensual encounter between law enforcement and a private citizen. *Id.*

In the circumstances of this case, it matters not that Ringger didn't feel free to move about the pharmacy during the search, because, as we have seen, controlling his movements was not an illegal seizure. Rather, the Court considers the issue of consent and whether Ringger reasonably believed that he had no choice but to submit to law enforcement questioning.

The Court finds that Ringger's interview with Sweatland and Moran began around 10:15 am, about fifteen minutes after the search team arrived—not four and a half hours later, as Ringger testified—and lasted about an hour. Moreover, Ringger consented to the interview. He did not contradict his questioners' testimony that they asked him if he wanted to be interviewed and he agreed. Although Moran candidly admitted that he didn't remember whether Ringger was told specifically that he didn't have to submit to the interview, Sweatland testified that he was so advised. The Court credits her testimony over Ringger's contrary claim.

Additionally, none of the circumstances surrounding the interview would lead a

reasonable person to believe he had no choice but to answer Sweatland and Ringger's questions. Of the two interviewers, only Moran was armed. He did not display his weapon. The officers did not touch Ringger. They used a conversational tone during the interview. While they did take him to a private area to conduct the interview, that fact is not an indication that he was being compelled to submit to questioning. It was perfectly reasonable to conduct the interview away from the hubbub of the ongoing search and out of earshot of other pharmacy employees.

Because the facts as found by the Court show that the statements Ringger made to Sweatland and Moran were voluntary, and not the product of an illegal seizure, they will not be suppressed.

**D.      Conclusion**

For the foregoing reasons, Defendant Charles Ringger's motion (DE 45) to suppress statements he made to law enforcement officers on September 11, 2013, is **DENIED**.

SO ORDERED on December 21, 2018.

s/ Joseph S. Van Bokkelen  
Joseph S. Van Bokkelen  
United States District Judge