UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 2:17-CR-073 JD |
| JAMES E RANOCHAK et al. | |

**OPINION AND ORDER**

The Government has submitted a *Santiago* proffer in which it seeks preliminary admission of statements against Defendants James E. Ranochak, Brent Losier, and Charles N. Ringger. The proffer describes the evidence that the Government will present at trial to prove two conspiracies: (1) a conspiracy to distribute and dispense controlled substances outside the scope of professional practice and not for legitimate medical purposes; and (2) a conspiracy to defraud Indiana Medicaid. (DE 277 at 14.) The proffer also describes the evidence the Government will present to show that Ranochak, Losier, and Ringer were members of the conspiracies. (*Id.* at 15–46.) However, the proffer fails to describe, in any detail, the statements the Government believes were made in furtherance of the conspiracy. After considering the Government's submission, the Court finds that the Government has failed to satisfy the requirements under Federal Rule of Evidence 801(d)(2)(E) to admit statements as non-hearsay evidence under the coconspirator exception.

An out of court statement offered for the truth of the matter asserted is generally inadmissible hearsay. Fed. R. Evid. 801(c); 802. But under Rule 801(d)(2)(E), a statement that would otherwise be hearsay is not considered hearsay where "[t]he statement is offered against an opposing party and . . . was made by the party's coconspirator during and in furtherance of the conspiracy." The Court is required under Federal Rule of Evidence 104(a) to "make a

preliminary determination regarding the admissibility of the declaration of a coconspirator." *United States v. Rodriguez*, 975 F.2d 404, 406 (7th Cir. 1992). As a condition of admission of such statements, the government must demonstrate by a preponderance of the evidence that: (1) a conspiracy existed; (2) the defendant and declarant were both members of the conspiracy; and (3) the statements to be admitted were made in the course of and in furtherance of the conspiracy. *Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *United States v. Bey*, 725 F.3d 643, 648 (7th Cir. 2013); *Rodriguez*, 975 F.2d at 406.

The Seventh Circuit has endorsed a process for admitting statements under this rule by which a district court may conditionally admit the statements based on a pretrial proffer by the government, subject to reevaluation at trial based on the evidence actually presented. *United States v. McClellan*, 165 F.3d 535, 553–54 (7th Cir. 1999); *United States v. Alviar*, 573 F.3d 526, 540 (7th Cir. 2009). In making its determination, the Court must decide "if it is more likely than not that the declarant and the defendant were members of a conspiracy when the hearsay statement was made, and that the statement was in furtherance of the conspiracy." *United States v. Santiago*, 582 F.2d 1128, 1134 (7th Cir. 1978). The Court may consider the proffered statements themselves as evidence of both the existence of a conspiracy and the defendant's participation in the conspiracy, but the contents of the statements must also be corroborated by at least some supporting evidence. *United States v. Harris*, 585 F.3d 394, 398–99 (7th Cir. 2009). Such evidence may be either direct or circumstantial. *See United States v. Johnson*, 592 F.3d 749, 754–55 (7th Cir. 2010).

Here, the Government seeks a conditional ruling admitting "any and all" statements made by Ranochak, Ringger, and Losier in the course of patients being seen by Ranochak and having their prescriptions filled at the North Anthony Pharmacy, as well as statements made by the

Defendants to the employees of North Anthony Pharmacy.[1] (DE 277 at 29.) Additionally, the Government requests admitting "any and all" statements made by the Defendants to undercover officers, posing as patients, during the course of the undercover patients being seen. (DE 277 at 38.) Finally, the Government seeks to conditionally admit "numerous written documents" used by the defendants. (DE 277 at 12.) However, beyond requesting that "any and all" statements made by the Defendants be admitted, the Government never identifies the substantive scope of the statements they seek to admit under the coconspirator hearsay exception.

---

[1] The Court notes that the Government devotes roughly 15 pages of its *Santiago* proffer to discussing events surrounding the Canterbury Pharmacy. (DE 277 at 14–29.) After summarizing the events which occurred at the Canterbury Pharmacy, the Government states that it "intends to introduce any and all of the statements made by Ranochak, Ringger, and Losier in the course of these patients being seen by Ranochak and having their prescriptions filled at *North Anthony Pharmacy*, as well as statements made by defendants to the employees of *North Anthony*." (DE 277 at 29 (emphasis added).) Even though the Government includes multiple statements from the Defendants during their time working at Canterbury Pharmacy, or when trying to purchase Canterbury Pharmacy in the case of Losier, the Court takes the Government at its word that it is only seeking to introduce statements from the Defendants in the course of patients being seen by Ranochak and prescriptions filled at North Anthony Pharmacy, as well as statements made by the Defendants to the employees of North Anthony Pharmacy. The Court views these 15 pages as simply describing evidence relevant to proving the conspiracy *at* North Anthony Pharmacy. To the extent that the Government was seeking to admit hearsay statements made during the course of the Defendants working at the Canterbury Pharmacy, or in the case of Losier attempting to purchase Canterbury, the Court will not conditionally admit any such statements under the coconspirator exception because (1) the government did not request those statements be conditionally admitted and (2) almost every statement by the Defendant at the Canterbury pharmacy referenced by the Government in its *Santiago* proffer constitutes non-hearsay. For example, the Government indicates it intends to present evidence that Ringger told an employee "to take a few bottles home and compound them off the clock and he would pay him cash under the table." (DE 277 at 21.) This is not hearsay because it is a command, and commands are not an assertion of fact. *United States v. White*, 639 F.3d 331, 337 (7th Cir. 2011) ("[A] command is not hearsay because it is not an assertion of fact.") According to the Government, another employee will testify that, during examinations, Ranochak would almost never conduct a physical exam of a patient and would simply ask: "Where do you hurt?, "Who did you see?," What did they prescribe you?", or "How much?" (DE 277 at 25.) However, the Seventh Circuit has held that "questions are not 'statements' and therefore are not hearsay." *United States v. Love*, 706 F.3d 832, 840 (7th Cir. 2013). Other statements that the government includes also are not being introduced for the truth of the matter asserted. For example, it appears an employee will testify that Ringer "would tell the regular pharmacy customers that they should see Ranochak" and that "Ringger would tell the customers that Ranochak specialized in pain management, urgent care and hormone treatments." (DE 277 at 28.) However, the Government would be admitting this to show that Ringger was trying to promote his coconspirators business, not because the Government was trying to prove that Ringger was, in fact, a specialist in pain management, urgent care, and hormone treatments. These non-hearsay statements clearly do not require conditional admittance under *Santiago*.

The Court begins its analysis by determining whether the Defendants were members of a conspiracy when the hearsay statements were made.[2] "An unlawful conspiracy exists when two or more people agree to commit an unlawful act, and the defendant 'knowingly and intentionally' joins in the agreement." *United States v. Bey*, 725 F.3d 643, 648 (7th Cir. 2013) (citing *United States v. Johnson*, 592 F.3d 749, 754 (7th Cir. 2010)). In order for the Court to conditionally admit a statement, it must be more "likely than not that the declarant and the defendant were members of a conspiracy when the hearsay statement was made." *Santiago*, 582 F.2d at 1143.

As an initial matter, however, the Court determines whether evidence concerning the Canterbury Pharmacy is admissible under Rule 404(b). Defendant argues that the "government's proffer of a conspiracy is largely based on inadmissible Rule 404(b) evidence" concerning the Canterbury Pharmacy. (DE 397 at 2.) The Court notes that when determining whether to accept the *Santiago* proffer, the "court is not bound by evidence rules, except those on privilege." Fed. R. Evid. 104; *see also United States v. Moreno*, No. 13-CR-576, 2016 WL 1555581, at *4 (N.D. Ill. Apr. 18, 2016) (noting that the court is not bound by the evidentiary rules, except those on privilege, when making a preliminary determination of whether coconspirator statements are admissible). Therefore, even if the Canterbury evidence is inadmissible under 404(b), it could still be utilized to make a preliminary determination of whether coconspirator statements are admissible. However, because Defendants raise this issue, and also raised it in a motion in limine, the Court will consider it here.

---

[2] Here, because the Plaintiffs seek to admit "any and all" statements from the Defendants to patients of Ranochak at North Anthony Pharmacy, patients getting prescriptions filled at North Anthony Pharmacy, and employees of North Anthony Pharmacy, the Court examines whether the Defendants were members of the conspiracies while working at North Anthony Pharmacy.

4

A.  **Evidence Concerning Canterbury Pharmacy is Admissible Under Rule 404(b)**

The Defendants argue that the evidence surrounding the Canterbury Pharmacy is inadmissible 404(b) evidence and should not be considered when determining if a conspiracy existed. (DE 397 at 2.) This argument is based on Defendant's fifth motion in limine to exclude all evidence concerning Canterbury Pharmacy. In that motion, Defendants argue that the Government's evidence concerning Canterbury Pharmacy would "only serve as propensity evidence," since the events at Canterbury Pharmacy took place prior to the conspiracy alleged in the indictment. (DE 259 at 2.) However, the Government asserts that the evidence concerning Canterbury Pharmacy goes toward the permissible purpose of showing the nature and origin of the relationship between the coconspirators. (DE 267 at 8–9.)

The government anticipates presenting testimonial evidence concerning the "defendants' conduct at Canterbury Pharmacy[,]" which the government believes "will reveal the defendants began engaging in illegal conspiratorial conduct while at Canterbury Pharmacy and once detected, simply moved to North Anthony Pharmacy to continue their conspiratorial activities." (DE 277 at 14.) It appears that Becky Bell, the owner of Canterbury Pharmacy, will testify that Ringger was employed as a pharmacist at Canterbury Pharmacy, located at 3537 North Anthony, in Fort Wayne, Indiana. (DE 267 at 7; DE 277 at 14–16.) When Ringger moved to full time work following Bell's husband passing away, he inquired about Ranochak coming to Canterbury Pharmacy, explaining to Bell that his "presence would generate business for Canterbury," making it more attractive for future buyers. (DE 277 at 15.) Soon after Ranochak began working at the Canterbury Pharmacy in July 2011, Ringger also informed Bell that Losier, Ringger, and another partner were interested in buying her business. (*Id.* at 15–16.) Ringger stated that he had known Losier for approximately 6 years. (*Id.* at 16.) Bell gave Losier a tour, during which Losier

5

stated that he was aware Ranochak lacked hospital privileges, that he saw HIPAA violations and border line illegal activities, that he could do things differently, and that he "knew how to push the limits into the gray area of the law." (*Id*.) After Bell heard of and observed activities such as patients being given medications without proper prescriptions and "shabbily dressed" individuals hanging out in the pharmacy," Bell fired Ringger and shut the pharmacy down. (*Id*. at 18–19.) However, Losier then "immediately took a lease on 3537 North Anthony and opened his own pharmacy at what had been Canterbury, bringing both Ringger and Ranochak into his business." (DE 267 at 8.)

The Court finds that this evidence does not violate Rule 404(b). The Seventh Circuit has explained that Rule 404(b) "allows the use of other-act evidence only when its admission is supported by some propensity-free chain of reasoning." *United States v. Gomez*, 763 F.3d 845, 856 (7th Cir. 2014). In other words, "Rule 404(b) excludes the evidence if its relevance to 'another purpose' is established *only* through the forbidden propensity inference." *Id.* Even though 404(b) lists certain permissible uses of other act evidence, the list is "not exhaustive." *United States v. Johnson*, 584 F.3d 731, 736 (7th Cir. 2009) (citing *United States v. Taylor*, 522 F.3d 731, 735 (7th Cir. 2008)). The Seventh Circuit has consistently found that one permissible purpose is to show the origin and evolution of a relationship between coconspirators. *United States v. Foster*, 652 F.3d 776, 785 (7th Cir. 2011); *Johnson*, 584 F.3d at 736 ("[E]vidence of prior bad acts can be introduced in conspiracy cases to show the formation of the conspiracy or the prior relationship between conspirators."). Additionally, the Seventh Circuit has reiterated that this is a permissible non-propensity purpose, even after *Gomez*. *See United States v. Grissom*, 760 F. App'x 448, 452 (7th Cir. 2019) (citing *Foster*, 652 F.3d at 785) ("Second counsel contemplates contesting the admission of evidence of Kemp's past commercial

6

burglaries with his co-conspirators. Counsel correctly concludes, however, that the district court did not abuse its discretion in admitting this evidence to show why Kemp recruited these co-conspirators.").

For example, in *United States v. Foster*, the Seventh Circuit determined that, in an appeal of a conviction for a bank robbery, evidence concerning a prior check-cashing scheme was not forbidden propensity evidence, since it showed the defendant's origin and evolution from committing check fraud with his coconspirator to committing armed robbery with his coconspirator. 652 F.3d at 785. The court there determined that this evidence was relevant and did not run afoul of 404(b) because it showed that the coconspirators knew each other not merely from a prior "social setting but an ongoing criminal relationship," which explained why the Defendant "trusted [his coconspirator], of all people, to help carry out the . . . robbery." *Id.*

Evidence of the coconspirators prior relationship may also help explain certain organizational roles, such as who the leader is and why other members were willing to take directions from that leader. *Johnson*, 584 F.3d 731, 737 (7th Cir. 2009) ("The evidence of [the defendant's] drug and gang activities before the period of the charged conduct explained how Johnson gained that control and why the lower-ranking gang members were willing to take direction from him."). In *Johnson*, the Seventh Circuit held that it was proper for the district court to admit "lengthy testimony explaining the history of [a defendant's] role in developing [a gang] . . . several co-conspirators' descriptions of [drug transactions that occurred prior to the conspiracy alleged in the indictment] . . . and [a witness's] testimony that [the defendant] told her to steal children's clothes in exchange for crack." *Id.* According to the court, this testimony, concerning crimes prior to the indictment, explained how the defendant went from a small-time drug dealer to developing a network of gang members, prevented jury confusion about the

7

Defendant's relationship with his underlings, and explained how this relationship formed into a conspiracy. *Id.*

Here, like in *Foster* and *Johnson*, the evidence the Government seeks to admit concerning Canterbury Pharmacy helps to explain the nature and origin of the relationship between the defendants. The testimony from Bell would provide important detail concerning why Ringger brought in Ranochak and introduced Losier to Bell, which gives background explaining why the Defendants were all operating out of the North Anthony Pharmacy. Without it, like in *Johnson*, the jury might be confused about the Defendants' relationship with one another. Furthermore, like in *Johnson*, testimony from various employees clarifies the *roles* of Ranochak and Ringger. For example, the Government asserts that multiple witnesses, who were employees, will testify Ringger "acted more like Ranochak's assistant" (DE 277 at 23) and that he would take calls, fax, check patients in, verify reports, and an appointment book for Ranochak. (*Id.* at 20.) Finally, employees at Canterbury would testify about how the relationships between the Defendants formed into a conspiracy. In addition to the testimony from Bell about how Ringger brought Losier and Ranochak on board, the Government represents that one employee, DC, would testify that Ranochak and Ringger followed the rules "but then got greedy" and "allowed more and more patients to get controls that the patients should not have received." (*Id.* at 22.) Similarly, the Government represents that another employee, who worked at the Canterbury Pharmacy from September 2010 through December 2011, will testify that she "noticed a change in operations and environment at Canterbury around the time when Ringger took over as qualifying pharmacist and Dr. Ranochak began practicing at Canterbury." (*Id.* at 23.) Therefore, because the evidence concerning Canterbury Pharmacy explains the nature and

evolution of the relationship between the Defendants, the Court finds that it does not violate Rule 404(b).

Defendants assert that the above evidence should, in the alternative, be prohibited under Rule 403. "Even if other-act evidence is relevant without relying on a propensity inference, it may be excluded under Rule 403, which applies with full force in this context . . . and gives the district court discretion to exclude relevant evidence if its probative value is 'substantially outweighed by a danger of . . . unfair prejudice[.]" *Gomez*, 763 F.3d at 857. However, the Court believes that prohibiting testimony concerning Canterbury Pharmacy altogether would result in jury confusion about the relationships and how the relationships formed into a conspiracy. *See Johnson*, 584 F.3d at 737. Additionally, the Court can limit the prejudicial effect of this testimony by giving the jurors an instruction to ensure they understand how they may consider the testimony. *See id.* (explaining that the district court properly instructed the jury on the proper purposes of the evidence after "[r]ecognizing the danger of a propensity inference"). The Court notes that the Defendants may raise other more specific Rule 403 challenges to testimony concerning the Canterbury Pharmacy at trial. However, the Court holds that excluding *all* testimony relating to the Canterbury Pharmacy under Rule 403 is not warranted.

Accordingly, because the Court finds that the evidence relating to the Canterbury pharmacy is admissible under Rule 404(b), the Court will now consider whether it is more likely than not that the declarant and the defendant were members of a conspiracy when the hearsay statements were made, and whether the statements the Government seeks to be introduced were in furtherance of the conspiracy. *Santiago*, 582 F.2d at 1143.

**B.      Existence of and Membership in Conspiracy**

9

The Court finds that there is sufficient evidence, making it more probable than not, that all three Defendants were members in two conspiracies: (1) a conspiracy to distribute and dispense controlled substances outside the scope of professional practice and not for legitimate medical purposes; and (2) a conspiracy to defraud Indiana Medicaid. (DE 277 at 14.)

There are several categories of evidence supporting this conclusion. First, as discussed above, the evidence from the Canterbury Pharmacy helps to show the evolution of the Defendants' relationships with one another and how the conspiracies at the North Anthony Pharmacy came into existence. *See supra* pp 5–9. Second, the Government plans on admitting testimony from various employees and patients at the North Anthony Pharmacy, which will support: (1) that Ranochak was providing 95% of North Anthony's business; (2) that prior to seeing Ranochak, patients had to see either Losier or Ringger; (3) that employees did not see Ranochak performing exams on patients; (4) that blood tests were not conducted prior to Ranochak prescribing controlled substances, such as testosterone or methadone; (5) that patients would simply tell Ranochak where their pain was, without an exam, prompting him to write a prescription; (6) that Losier or Ringger would then fill these prescriptions; (7) that some payments were made in cash; and (8) that other payments were through Indiana Medicaid. (DE 277 at 29–36.) Third, the Government plans to admit video recordings of undercover officers that establish that Ranochak did not physically examine the undercover officers or do the required diagnostic testing before prescribing controlled substances to the officers. (DE 277 at 36–38.) Fourth, the Government plans on introducing evidence produced from searches at Ranochak's residence, Losier's residence, and North Anthony Pharmacy, including bottles of testosterone, legend drugs, other controlled substances, cash, and handguns. (DE 277 at 38-44.)

The Court finds that this evidence is sufficient to show, by a preponderance of the evidence, that the Defendants were members in the two alleged conspiracies.

**C.      The Government Fails to Identify Any Statements Made in Furtherance of the Conspiracies.**

Even though the Government has shown, by a preponderance of the evidence, that each of the Defendants were members in the conspiracies, it has failed to prove by a preponderance of the evidence statements were made in furtherance of a conspiracy. The Government spends numerous pages describing its evidence that the conspiracies existed and Defendants' membership in those conspiracies. (DE 277 at 12–46.) However, after describing this evidence, the Government concludes its *Santiago* proffer with the following paragraph:

> The evidence summarized above establishes by a preponderance of the evidence that Ranochak, Losier, and Ringger conspired, and/or engaged in the scheme/joint venture as charged in the Count 1 and Count 10 of the indictment, or acted as agents of each other in furtherance of the above described joint criminal activity. *Therefore, pursuant to the above Santiago analysis, statements made by Ranochak, Losier, and Ringger should be found admissible pursuant to Rule 801(d)(2)(E)*.

(DE 277 at 47.) Even though the Government has established by a preponderance of the evidence (1) that a conspiracy existed (2) between Ranochak, Losier, and Ringger, *Santiago* requires that the Government prove a third element by a preponderance of the evidence: that the statements to be admitted were made in the course of and in furtherance of the conspiracy. The Government has failed to meet their burden as to this element.

In order for a statement to be in furtherance of the conspiracy, there must be "some reasonable basis [to conclude] that the statement furthered the conspiracy." *United States v. Shoffner*, 826 F.2d 619, 628 (7th Cir. 1987). A statement is "in furtherance of" a conspiracy when it promotes the conspiracy's objectives. *United States v. Gajo*, 290 F.3d 922, 929 (7th Cir. 2002). Under this standard, a statement is admissible as in furtherance of the conspiracy even if it

11

is susceptible to alternative interpretations, and "need not have been exclusively, or even primarily, made to further the conspiracy." *Shoffner*, 826 F.2d at 628.

While the Seventh Circuit has held that a proffer does not require the Government to submit "each and every" coconspirator statement it intends to introduce at trial, *McClellan*, 165 F.3d at 554, there must be some indication of the general contents of the statements the Government wants to admit. Courts have found that, where a *Santiago* proffer details the categories of statements the government seeks to admit, this can be sufficient to show, by a preponderance of the evidence, that the statements were made during and in furtherance of the conspiracy. In *United States v. McCellan*, for example, the statements the government sought to admit concerned the following categories of information: (1) deliveries of marijuana; (2) making arrangements to meet with coconspirators; (3) the manner in which the marijuana would be delivered and received; (4) the role and participation of various members; (5) arrangements for transportation; (6) receipt and delivery of marijuana; (7) arrangements and payments with regard to transportation expenses; and (8) arrangements concerning payments of currency to various members. 165 F.3d 535, 554 (7th Cir. 1999). Similarly, in *United States v. Alviar*, the Seventh Circuit determined that the district court did not commit clear error in admitting coconspirator statements where the governments proffer included (1) summaries of the recorded calls between the coconspirators it anticipated presented and (2) summaries of codefendant cooperators' anticipated testimony. 573 F.3d at 540. In line with those cases, this Court has approved *Santiago* proffers previously which have identified "general categories and subjects" that the government anticipated the statements would cover. *See United States v. Luciano*, No. 2:18-CR-7 JD, 2022 WL 2438043, at *3 (N.D. Ind. July 5, 2022) (admitting statements where the government indicated that they intended to include statements "identifying other members of the

12

conspiracy and their roles," "identifying the structure and origin of the conspiracy[,]" and "reviewing a coconspirator's exploits," among other identified categories). Other courts in this district, however, have taken a narrower approach, requiring that the government identify "the specific statements, including their specific substance or contents, speaker, and the approximate date, time and place of each statement," rather than allowing general categories of statements. *United States v. Lujan Fitzpatrick*, No. 2:16-CR-166, DE 82 (N.D. Ind. Oct. 30, 2019) (finding the Government's *Santiago* proffer insufficient and ordering them to file an amended proffer within a week).

However, where the Government does not even identify the general thrust of the statements it seeks to introduce, conditional admittance is not warranted. Under Rule 104, the Court is tasked with deciding "any preliminary question about whether . . . . evidence is admissible." Fed. R. Evid. 104. *Santiago* makes clear that "[u]nder Rule 104, the competence of a co-conspirator declaration justifying its admissibility depends upon whether or not the existence of the conspiracy has been sufficiently establishes, *and* whether under 801(d)(2)(E) the declaration was made during the course and in furtherance of the conspiracy." *Santiago*, 582 F.2d at 1131 (emphasis added). The Court must be satisfied under Rule 104 that "it is more likely than not that the declarant and the defendant were members of a conspiracy when the hearsay statement was made, and that the statement was in furtherance of the conspiracy[.]" *Id.* at 1134. In the years since *Santiago*, the Seventh Circuit has consistently stated that there must be "some reasonable basis [to conclude] that the statement furthered the conspiracy." *United States v. Stephenson*, 53 F.3d 836, 845 (7th Cir. 1995); *United States v. Stephens*, 46 F.3d 587, 597 (7th Cir. 1995); *United States v. Shoffner*, 826 F.2d 619, 628 (7th Cir. 1987). The Seventh Circuit has found that statements which are mere "idle chatter" are not in furtherance of a

conspiracy, while statements which are made for recruitment, to control damage, to conduct and further the conspiracy's business, or to keep coconspirators informed about the progress of the conspiracy are in furtherance of a conspiracy. *Stephenson*, 53 F.3d at 845; *United States v. Cox*, 923 F.2d 519, 527 (7th Cir. 1991) (finding that a coconspirators "statements of solicitation, his discussions of price, his reassurance as to the stature of his source, and his offer of future drug-provision services [were] classic examples of statements made to conduct and further the business of a drug conspiracy" and therefore admissible).

Even though the Government has a "relatively low burden of proof" on the issue of whether a statement is made "in furtherance of a conspiracy," the burden still exists. *Shoffner*, 826 F.2d at 628. Here, the Government seeks to submit "any and all" statements made by the Defendants "in the course of these patients being seen by Ranochak and having their prescriptions filled at North Anthony Pharmacy, as well as statements made by the defendants to the employees of North Anthony." (DE 277 at 29.) But this merely provides the context and setting of the statements without giving any indication of the substance of those statements. The Court is completely in the dark on what kinds of statements the Government wants to include. This is due to the fact that the "any and all" category of statements that the Government seeks to admit is far too overbroad: a statement from Ranochak to a patient at North Anthony Pharmacy that "the weather is certainly nice today" would fall under the broad umbrella of statements that they seek to admit under the Rule 801(d)(2)(e) hearsay exception, since it is (1) in the course of the patient being seen by Ranochak at the North Anthony Pharmacy and falls under the category of (2) "any and all" statements made by Ranochak. But such a statement would also fall under the type of "idle chatter" that the Seventh Circuit has held does not constitute being in furtherance of a conspiracy. *Stephenson*, 53 F.3d at 845. This type of statement would clearly not

14

be admissible under *Santiago*, and yet such a statement is squarely within the category of statements the Government seeks to include. What is apparent from the Government's submission is that merely providing the context of statements (i.e., where it was said and between whom), without providing any indication of the substance of those statements, does not allow for a determination by a preponderance of evidence whether any given statement, or category of statement, was in furtherance of a conspiracy.

      Even where the Government fails to specify which statements it seek to have admitted, some of our sister courts have looked at the rest of the proffer to determine the statements the government will seek to introduce at trial. For example, in *United States v. Morrow*, even though the government failed to identify specific statements, the proffer described statements pertaining to "the sale and purchase of crack cocaine," including the prices of the cocaine, "arranging meetings to carry out drug transactions[,]" and whether the coconspirators could fulfill an order. 971 F. Supp. 1254, 1258 (N.D. Ill. 1997). Here, however, the Government has filled their proffer with a morass of statements from the Defendants that appear to be non-hearsay. For example, the Government includes an affidavit from Ranochak and a DEA registration form filled out by Losier in order to open North Anthony Pharmacy. However, this evidence would be admitted to prove that the statements contained therein were *false*, not true, and therefore would clearly not constitute hearsay, *United States v. Bursey,* 85 F.3d 293, 296 (7th Cir.1996) ("[S]tatements that are offered not to prove 'the truth of the matter asserted,' but for some other legitimate purpose, do not qualify as hearsay."). Other examples of non-hearsay statements include Ranochak telling a patient that a prescription "was for [the patient's] pain[,]" calling a patient a "liar," and saying that he was prescribing testosterone because the patient "was going bald." (DE 277 at 33–35). None of these statements would constitute hearsay since the government would not be admitting

them to prove the patients were *actually* prescribed the medication for their pain or baldness, or were a liar, but rather to show that the Defendants were either coming up with false justifications for giving prescriptions or that their conduct strayed out of the bounds of professionally acceptable behavior. There are numerous other non-hearsay statements in the Government's proffer which would not fall under the coconspirator exception. *See supra* at 3 n.1. Regardless, it is not the burden of the Court to somehow predict which statements the Government is seeking to admit under the coconspirator exception; rather, it is the burden of the Government to identify the statements it is seeking to admit under Rule 801(d)(2)(E) and prove that these statements were made in furtherance of the conspiracy by a preponderance of the evidence.

Given that it is not apparent from the Government's proffer what statements it believes fall under the coconspirator exception, denial is proper. *See Johnson*, 927 F.2d at 1001 (7th Cir. 1991) (noting that statements not made "in furtherance of a conspiracy" should not be admitted and that Rule 801(d)(2)(E) is a "*limitation* on the admissibility of co-conspirators statements that is meant to be taken seriously"). While the interactions between patients and the Defendants may have theoretically contained statements furthering the conspiracy, the Government has failed to identify any of these statements or the general categories of statements that they hope to introduce at trial. Without that, the Court cannot find by a preponderance of the evidence that any statements by the Defendants were made during and in furtherance of the conspiracy.

Therefore, the Government may not introduce coconspirator statements under the Rule 801(d)(2)(E) hearsay exception, given that its proffer, in the span of nearly fifty pages, has failed to identify the substance of any of the statements it hopes to admit or explain how the statements were in furtherance of either conspiracy. Courts have denied *Santiago* proffers previously where the Government has failed to show that statements to be introduced fall within the scope of

16

801(d)(2)(E). *See United States v. Jett*, No. 116CR00001TWPTAB, 2017 WL 402154, at *3 (S.D. Ind. Jan. 30, 2017) (denying motion to admit an interrogation room statement under Rule 801(d)(2)(E) pursuant to a Santiago proffer where "[t]he Government has provided almost no evidence to support its contention that the statement was made in furtherance of an ongoing conspiracy"); *United States v. Fassnacht*, No. 01 CR 0063, 2002 WL 63523, at *10 (N.D. Ill. Jan. 15, 2002) (finding that "tape-recorded statements are inadmissible against the defendants" under the coconspirator exception because "the government ha[d] not established by a preponderance of the evidence that [the coconspirator's] tape-recorded statements fall within the scope of Rule 801(d)(2)(E)"); *see also United States v. Lillie*, No. 08 CR 717-2, 2009 WL 3617495, at *6 (N.D. Ill. Oct. 29, 2009) (finding that the defendants statements were not admissible under Rule 801(d)(2)(E) because the Government failed to show that the statements were in furtherance of the conspiracy).

**D.     Conclusion**

The Government's *Santiago* proffer has failed to describe, in any meaningful way, the statements it seeks to admit pursuant to the coconspirator exception. However, the Court will allow the Government an opportunity to supplement its *Santiago* proffer. With trial beginning in just over two weeks, time is of the essence.

Accordingly, the Government is ORDERED to file a supplement to its *Santiago* proffer which identifies the specific statements the Government seeks to admit under the coconspirator exception, including their specific substance or contents, speaker, and the approximate date,

17

time, and place of each statement.[3] The Government is ORDERED to file this supplement by Thursday, September 15, 2022.

SO ORDERED.

ENTERED: September 9, 2022

                /s/ JON E. DEGUILIO
               Chief Judge
               United States District Court

---

[3] To assist the Court with its review, generalized categories of statements should not be provided. Rather, *specific* statements should be submitted in accordance with this order.