UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 2:17-CR-73 JD |
| JAMES E RANOCHAK et al. | |

**OPINION AND ORDER**

Defendants Charles Ringger and Brent Losier have filed a motion to sever from their joint trial with James Ranochak. (DE 412.) Ringger and Losier assert that Ranochak would be willing to present exculpatory testimony at their trial should the Court sever their case from his. (*Id.* at 10.) In a declaration, Ranochak conditions his testimony, in the event of severance, on his trial preceding his co-defendants. (*Id.* at 15–17.) As the Court explains below, such a condition is fatal to Ringger and Losier's motion.

A.     **Factual Background**

On June 22, 2017, a grand jury indicted Ringger, Losier, and Ranochak on ten counts. (DE 1.) The first count alleges a conspiracy to illegally dispense and distribute controlled substances. (*Id.* at 3–6.) The next seven counts allege that the defendants distributed controlled substances outside the scope of professional practice and not for a legitimate medical purpose. (*Id.* at 7–14.) The tenth count alleges a conspiracy to commit health care fraud. (*Id.* at 15–21.) The defendants each pled not guilty to the charges. (DE 22; DE 30.)

This case is over five years old as a result of the trial being continued numerous times. (DE 84; DE 127; DE 131; DE 197; DE 305; DE 342; DE 373; DE 388.) Trial is currently set to begin on Monday, September 26, 2022. (DE 389.) On September 15, 2022, defendant Charles Ringger filed a motion to sever his trial from his co-defendant, James Ranochak (DE 412), which

Brent Losier has moved to join.[1] (DE 414.) The Government has filed its response to Ringger and Losier's motion, and the Defendants have filed a reply, making the motion ripe for review. (DE 424; DE 425.)

**B.     Discussion**

Under Federal Rule of Criminal Procedure 8(b) "[t]he indictment . . . may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). Pursuant to Rule 8(b), Ranochak, Losier, and Ringger were indicted together. (DE 1.) When parties are indicted in this manner, there is a preference to try those defendants together. *United States v. Maggard*, 865 F.3d 960, 971 (7th Cir. 2017). This preference is especially strong when the indictment alleges that the defendants were in a conspiracy. *Id.* ("The federal system prefers defendants who are indicted together also to be tried together . . . [and] [t]his preference is especially strong with coconspirators."). A joint trial in such a circumstance promotes efficiency and also serves "the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Zafiro v. United States*, 506 U.S. 534, 537 (1993).

Despite the general preference for having joint trials for co-conspirators who are indicted together, there are some circumstances where joinder may prejudice a defendant. *See Maggard*, 865 F.3d at 971 ("[Joint trials] can also prejudice the defendants who are tried together."). In order to address this, Rule 14(a) provides that "[i]f the joinder of . . . defendants in an indictment . . . for trial appears to prejudice a defendant or the government, the court may . . . sever the defendants' trials . . . ." Fed. R. Crim. P. 14(a).

---

[1] The Court grants the motion to join, as it is unopposed.

2

A defendant has a "heavy burden" under Rule 14(a) to secure a severance. *United States v. White*, 737 F.3d 1121, 1133 (7th Cir. 2013). This heavy burden exists because "[i]n all but the most unusual circumstances, the risk of prejudice arising from a joint trial is outweighed by the economies of a single trial in which all facets of the crime can be explored once and for all." *United States v. Spagnola*, 632 F.3d 981, 987 (7th Cir. 2011). In order to overcome that burden, the defendant must do more than show that severance would give him "a better chance of acquittal." *United States v. Peterson*, 823 F.3d 1113, 1124 (7th Cir. 2016). Rather, the defendant must show that "actual prejudice result[s] from the joinder." *United States v. L'Allier*, 838 F.2d 234, 241 (7th Cir. 1988). Actual prejudice "focuses on fairness" and whether denying severance would deprive the defendants "of their right to a fair trial." *Maggard*, 865 F.3d at 972; *see also United States v. Rollins*, 301 F.3d 511, 518 (7th Cir. 2002) ("[A] defendant must demonstrate that the denial of severance caused him 'actual prejudice' that deprives him of his right to a fair trial; it is insufficient that separate trials would have given a defendant a better opportunity for an acquittal.").

One situation where there may be a serious risk that a joint trial would compromise a defendant's right to a fair trial is if "essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial." *Zafiro*, 506 U.S. at 539. When determining if severance is justified in such a circumstance, the Court looks to three factors: "(1) whether the co-defendant's testimony would in fact be exculpatory; (2) whether the co-defendant would in fact testify; and (3) whether the testimony would bear on defendant's case." *United States v. Lopez*, 6 F.3d 1281, 1285 (7th Cir. 1993) (citing *United States v. Tolliver*, 937 F.2d 1183 (7th Cir. 1991)).

Ringger and Losier argue that Ranochak would provide them with highly exculpatory testimony which would be unavailable in a joint trial. They assert that, if severance is granted, Ranochak will testify "that his prescriptions were issued for a legitimate medical purpose in the usual course of practice" and that "he was aware of no indications that Ringger (or Mr. Losier) filled those prescriptions with any actual knowledge that the prescriptions were not issued for a legitimate medical purpose." (DE 412 at 3.) Ringger and Losier have provided a signed declaration from Ranochak indicating that he is willing to testify to that effect. However, in that declaration, Ranochak also indicates that his willingness to testify "is dependent on [his] trial proceeding first" and that if Losier and Ringger's "trial were to occur before [his], [he] would reserve the right to invoke [his] privilege not to testify." (*Id.* at 15, 17.) Such a condition is fatal to Ringger and Losier's motion.

A conditional offer by a defendant to testify does not satisfy the second element of the three-part test laid down in *Lopez* (i.e., "whether the co-defendant would in fact testify"). *Lopez*, 6 F.3d at 1285. While there has not been much case law in the Seventh Circuit considering conditional offers to testify in this circumstance, *Mack v. Peters*, 80 F.3d 230 (7th Cir. 1996) provides strong support for such a rule. There, the Seventh Circuit was faced with the question of whether a lower court (who had severed the trial of three co-defendants) deprived a defendant of his right to a fair trial where the lower court conducted two simultaneous, but separate trials of the co-defendants in such a manner as to deprive one of the defendants of his co-defendant's exculpatory testimony when that co-defendant invoked his Fifth Amendment right against self-incrimination. *Id.* at 233–235. The defendant had previously objected to the sequence of the trial, demanding that that it be sequenced in a manner that would allow his co-defendant to provide his exculpatory testimony. *Id.* The Seventh Circuit began its analysis by noting that it had not

previously addressed "the issue of trial sequence in simultaneous trials of codefendants[,]" but considered "the analysis similar to that which we employ in reviewing issues of *severance* of codefendants in order to obtain codefendant testimony." *Id.* at 235 (emphasis added). The court then explained that "severance of codefendants does not create a right to a particular trial sequence" because "[t]o provide otherwise would afford to defendants indicted together a right not held by defendants indicted separately." *Id.* The court found that under the three-part severance test described in *Lopez* that the defendant would not have met the second element, since all the "court had was [the defendant's] conditional offer to [testify]." *Id.* at 236. The court explained that "[b]ecause these facts would not mandate even severance, the court could not have abused its discretion in declining [the defendant's] demand to reorder the sequence of the trials." *Id.* at 237.

While *Mack* ultimately holds that "a defendant has no right to have his case tried in any particular order," *Id.* at 237, the logic underpinning this holding clearly supports that severance is not justified where a defendant conditions providing his exculpatory testimony on the sequence of the trials. The Seventh Circuit expressly relies on the inference that because severance would not be granted in the face of such a conditional offer, then a defendant's demand to reorder a trial when tried separately should not be granted either. *Id.* at 237. ("Because these facts would not mandate even severance, the court could not have abused its discretion in declining [the defendant's] demand to reorder the sequence of the trials."). Our sister courts have reached similar interpretations of *Mack*. *See, e.g., U.S.A. v. King*, No. 06 CR 50074-2, 2008 WL 11516229, at *2 (N.D. Ill. Mar. 5, 2008) (citing *Mack*, 80 F.3d 230) ("Nor would a conditional offer by [defendant to testify] satisfy the second element of the test.").

5

Furthermore, a majority of circuits agree that severance is not required where a defendant conditions his offer to testify on his case being tried first. Five circuits have explicitly held as such. *United States v. Ford*, 870 F.2d 729, 731 (D.C. Cir. 1989) (finding that the "appellant's conditional showing does not satisfy the requirement that he demonstrate a reasonable probability of [his co-defendant's] willingness to testify"); *United States v. Parodi*, 703 F.2d 768, 779 (4th Cir. 1983) ("[T]he requirement of a showing of willingness to testify if there is a severance is not met when that offer to testify is further conditioned on the co-defendant's case being tried first."); *United States v. Blanco*, 844 F.2d 344, 353 (6th Cir. 1988) (refusing to grant a severance since the defendant's testimony was "conditioned upon his being tried [before his co-defendant]," which would improperly allow "Rule 14 [to serve] as a mechanism for alleged co-conspirators to control the order in which they are tried"); *United States v. Mariscal*, 939 F.2d 884, 886 (9th Cir. 1991) ("A district court does not abuse its discretion 'in refusing to accede' to a codefendant's offer to testify when the offer is conditioned upon his trial being completed first."); *United States v. Espinosa*, 771 F.2d 1382, 1409 (10th Cir. 1985) (finding that a "conditional offer to testify was in effect a simple alibi-swapping device . . . [and that granting] a severance under such a condition would allow co-defendants to employ a motion for severance to obtain benefits they would not have but for their joint indictment").

The Second circuit has not explicitly held that such conditional offers are always forbidden, but it has repeatedly noted that such conditional offers "smack of bad faith." *United States v. Spinelli*, 352 F.3d 48, 56 (2d Cir. 2003); *United States v. Bari*, 750 F.2d 1169, 1177 (2d Cir. 1984). Following the Second Circuit's admonition that such conditional offers "smack of bad faith," courts in both the Eastern District of New York and Southern District of New York have held that such conditional offers do not suffice. *United States v. Gardell*, No. S400CR.632,

2001 WL 1135948, at *9 (S.D.N.Y. Sept. 25, 2001) ("However, the requirement of a showing of willingness to testify if there is a severance is not met when that offer to testify is further conditioned on the co-defendant's case being tried first.") (internal quotations omitted); *United States v. Gershman*, No. 16-CR-553 (BMC), 2018 WL 3038498, at *1 (E.D.N.Y. June 19, 2018). Similarly, even though the First Circuit has not explicitly decided the issue, it has noted the lines of cases in other circuits which have "ruled that an offer to testify, conditioned on one defendant being tried before the other, fails to satisfy the elements of a prima facie case for severance." *United States v. Smith*, 46 F.3d 1223, 1231 n.3 (1st Cir. 1995). Like the district courts in the Second Circuit discussed above, district courts in the First Circuit have similarly found that conditional offers are not sufficient to "demonstrate that [a defendant] will testify as required" to grant severance. *United States v. Pingaro*, 784 F. Supp. 2d 77, 82 (D. Mass. 2011).

Ringger and Losier present no reason to deviate from the dicta in *Mack* or the overwhelming view among the circuit courts discussed above. Ringger and Losier argue that Ranochak's condition being "dependent [upon] his trial proceedings before the trials of Messrs. Ringger and Losier . . . only makes sense." (DE 414 at 10.) According to them, "[i]t would not be fair or appropriate for Dr. Ranochak to have to waive his 5th Amendment privilege prior to the completion of his own trial." (*Id.* at 10–11.) However, the Court sees nothing unfair about such a requirement. If the defendants had each been charged in separate indictments, Ranochak's trial could have been scheduled last because, as explained in *Mack*, "a defendant has no right to have his case tried in any particular order." *Mack*, 80 F.3d at 237. In such a circumstance, like here, Ranochak would have been required to waive his Fifth Amendment privilege prior to the completion of his own trial in order to provide exculpatory testimony on Ringger and Losier's behalf. Additionally, even if the Court were to sever here, there is nothing requiring this Court to

sequence the trials after severance in accordance with Ranochak's preference. *See Mack*, 80 F.3d at 235 ("Nor does a conditional offer to testify by a codefendant create a right to control trial sequence."). The Court could schedule Ringer and Losier's trial prior to Ranochak's, which, by his own admission, would result in Ranochak invoking his Fifth Amendment right and not testifying. (DE 412 at 3, 15, 17.) Therefore, because Ranochak's preferred sequence does not dictate the sequence of this trial, the Court cannot be assured that he will, in fact, testify, which is required for severance to be granted. *Lopez*, 6 F.3d at 1285.

Furthermore, the substance of Ranochak's exculpatory testimony would likely be the same whether offered in the instant trial, in his own defense, or in his co-defendants' trial, in their defense. In the event of severance, Ranochak will ostensibly testify that he was prescribing controlled substances for a "legitimate medical purpose," that his co-defendants assisted him to avoid improper diversion and use of controlled substances, and that there were no indications that the co-defendants had any knowledge that the prescriptions were not issued for a legitimate medical purpose in the usual course of practice. (DE 412 at 7–8.) However, this testimony would be exculpatory not only for the co-defendants, but also for Ranochak. And if Ranochak chooses to take the stand in this case, as a joint trial, and waive his Fifth Amendment privilege, then there is every reason to think that his testimony would *help*, not hinder, both his and his co-defendants case. This underscores that there is no risk of prejudice here: if Ranochak were to invoke his Fifth Amendment right and not testify here, then he would do the same if this were to be severed and Ringer and Losier's trial preceded his; if, on the other hand, Ranochak were to testify in this joint trial, then he would likely testify the same exact way he would testify in a severed trial where Ringer and Losier's trial preceded his. If both the substance of Ranochak's testimony as well as his choice to testify would remain the same, regardless of severance, then clearly there is

no prejudice by keeping this as a joint trial. *Zafiro*, 506 U.S. at 539. ("[A] defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial.").

The Court also notes that the interests of judicial economy also counsel against severance in this circumstance. As the Government notes in its response (DE 424 at 5), this case is complicated and resource intensive. The trial is expected to last about three weeks and involve a large number of witnesses. If the Court were to sever, then there would likely be a substantial amount of duplicative testimony from witnesses, and the Court would likely have to convene three juries, rather than one. Rather than resulting in multiple uncomplicated trials, this would likely result in multiple complicated trials. *See United States v. Harris*, 542 F.2d 1293, 1313 (7th Cir. 1976) (explaining that one situation where severance could be proper is where the severance would result in "two relatively uncomplicated trial in place of one.").

There is yet another interest served by refusing severance, which is to avoid "the scandal and inequity of inconsistent verdicts." *United States v. Alviar*, 573 F.3d 526, 539 (7th Cir. 2009). Ringger and Losier assert in their motion that if Ranochak were to be acquitted in a separate, initial trial, "then it would seem that a trial for the pharmacists would not be needed." (DE 412 at 4.) However, this not only speculates that Ranochak would be acquitted (which is not guaranteed), but also ignores that prosecutors could still prosecute the other defendants, *even if* Ranochak were acquitted. *See United States v. Patterson*, 213 F. Supp. 2d 900, 911 (N.D. Ill. 2002) (noting that a conviction of one coconspirator could stand even where the other coconspirator was not convicted). Rather, such a decision would be a question of prosecutorial discretion. *United States v. Scott*, 631 F.3d 401, 406 (7th Cir. 2011) (explaining that "[i]n our criminal justice system, the Government retains 'broad discretion' as to whom to prosecute").

However, what is certain is that allowing the trials to proceed separately would, as noted above, open up the possibility of scandal and inequity from inconsistent verdicts. The Court believes that this, as well as reasons of judicial economy, counsel in favor of denying the motion.[2]

### C.     Conclusion

For the reasons explained above, the Court GRANTS defendant Brent Losier's motion to join. (DE 414.) However, the Court DENIES the motion to sever. (DE 412.) Trial will proceed as scheduled.

SO ORDERED.

ENTERED: September 20, 2022

/s/ JON E. DEGUILIO
Chief Judge
United States District Court

---

[2] At the Final Pretrial Conference, the Government argued that Ringger and Losier's motions were untimely under Rule 12 of the Federal Rules of Criminal Procedure. However, Rule 12(c)(1) specifies that "the deadline is the start of the trial" if the court does not set a different deadline. The Court did not set a separate deadline. (DE 345.)